2014 ND 89

**In the Interest of Maurice Robert THILL.**

**Brian D. Grosinger, Assistant State's Attorney, Petitioner and Appellee**

v.

**Maurice Robert Thill, Respondent and Appellant.**

**No. 20130291.**

Supreme Court of North Dakota.

April 29, 2014.

Brian D. Grosinger, Assistant State's Attorney, Mandan, N.D., for petitioner and appellee.

Kent M. Morrow, Bismarck, N.D., for respondent and appellant.

McEVERS, Justice.

[¶ 1] Maurice Robert Thill appeals from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. We affirm, concluding the district court did not err in finding Thill remains a sexually dangerous individual.

I

[¶ 2] In August 2012, the district court found Thill was a sexually dangerous individual and committed him to the custody of the director of the Department of Human Services. In April 2013, Thill filed a petition for discharge with the district court and requested a hearing. Dr. Robert Lisota, a licensed psychologist at the North Dakota State Hospital, completed an annual re-evaluation of Thill. Dr. Lisota rec-

ommended Thill's continued commitment because he remains a sexually dangerous individual who has serious difficulty controlling his behavior and is likely to engage in future sexually predatory conduct. The court also appointed Dr. Stacey Benson, a licensed clinical psychologist, to complete an independent evaluation of Thill. Dr. Benson, who had also completed an evaluation of Thill at the time of his initial commitment, again evaluated Thill and opined that he no longer remains a sexually dangerous individual.

[¶ 3] In August 2013, the district court held a discharge hearing on Thill's petition and heard testimony from both Dr. Lisota and Dr. Benson. Both experts' reports were made part of the record. Thill also testified on his own behalf. After the hearing, the court denied his petition for discharge. The court found Thill continues to be a sexually dangerous individual and ordered his continued commitment.

II

[¶ 4] This Court reviews the civil commitment of a sexually dangerous individual under a modified clearly erroneous standard of review. In re Hehn, 2013 ND 191, ¶ 7, 838 N.W.2d 469; In re Graham, 2013 ND 171, ¶ 9, 837 N.W.2d 382. We will affirm the district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. Hehn, at ¶ 7; Graham, at ¶ 9. In reviewing the order, we give "great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." In re Wolff, 2011 ND 76, ¶ 5, 796 N.W.2d 644. We have explained that the district court is "the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations." Id.

[¶ 5] At a discharge hearing, the State must prove by clear and convincing evidence the committed individual remains a "sexually dangerous individual." N.D.C.C. § 25–03.3–18(4); *Hehn*, 2013 ND 191, ¶ 8, 838 N.W.2d 469. To prove a committed individual remains a "sexually dangerous individual," the State must show three statutory elements:

> (1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct.

*See* N.D.C.C. § 25–03.3–01(8); *Hehn*, at ¶ 8. The phrase "likely to engage in further acts of sexually predatory conduct" means the individual's propensity to pose a threat to others. *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686. *See also Interest of Corman*, 2014 ND 88, ¶ 17 (discussing meaning of "sexually predatory conduct").

[¶ 6] In addition to the three statutory elements, the State must also prove a constitutionally required element that the individual has "serious difficulty controlling his behavior." *E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686; *see also Kansas v. Crane*, 534 U.S. 407, 412–13, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Thus, to comport with the statute's language and constitutional substantive due process concerns, this Court:

> "construe[s] the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case."

*Matter of G.R.H.*, 2006 ND 56, ¶ 18, 711 N.W.2d 587; *see also Crane*, 534 U.S. at 412–13, 122 S.Ct. 867. We have also explained that the conduct evidencing the individual's serious difficulty in controlling his behavior need not be sexual in nature. *See Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644.

## III

[¶ 7] Thill does not contend that the State failed to meet its burden on the first two prongs of N.D.C.C. § 25–03.3–01(8). Under the first prong of N.D.C.C. § 25–03.3–01(8), the district court found, and both experts agree, that Thill has engaged in sexually predatory conduct. Thill's criminal history includes four prior convictions for gross sexual imposition in the early 1990s, and a gross sexual imposition conviction in about 2004, stemming from conduct in 1999. *See State v. Thill*, 2005 ND 13, 691 N.W.2d 230; *State v. Thill*, 473 N.W.2d 451 (N.D.1991); *State v. Thill*, 468 N.W.2d 643 (N.D.1991). We also note that, after fleeing prosecution in North Dakota, Thill was convicted in about 2001 of attempted sexual exploitation of a child in Kansas.

[¶ 8] The district court also found clear and convincing evidence Thill has a sexual disorder, and both Dr. Lisota and Dr. Benson diagnosed Thill with "pedophelia, sexually attracted to both, non-exclusive type." As the district court also noted in its order, in the original commitment proceeding, Dr. Jennifer Krance had additionally diagnosed Thill with the sexual disorder of sexual sadism. In this proceeding, Dr. Lisota concurred with Thill's additional diagnoses of sexual sadism and personality disorder, not otherwise specified with antisocial and narcissistic features.

[¶ 9] On appeal Thill contends the State did not provide sufficient evidence to establish he continues to be a "sexually dangerous individual," such that the disorder makes him likely to engage in further acts of sexually predatory conduct and that he has serious difficulty controlling his behavior.

### A

[¶ 10] Thill argues the district court's finding that he is likely to engage in further acts of sexually predatory conduct, is not supported by clear and convincing evidence. Specifically, he contends Dr. Lisota's opinion, that Thill's pedophelia diagnosis in part established this nexus, and Dr. Lisota's attempt to buttress his conclusion through use of the Stable 2007 test to suggest "dynamic risk factors" support the conclusion of a likelihood to reoffend is not supported by sufficient evidence. Thill argues that, when "professional research by the experts in the field" cannot conclude to a reasonable degree of certainty that successful completion of treatment has the necessary protective value to reduce an offender's risk of reoffending, Dr. Lisota's opinion that Thill is likely to reoffend is not supported by clear and convincing evidence.

[¶ 11] Here, the district court found clear and convincing evidence that Thill is likely to reoffend. The court initially noted its previous finding on this prong in the original commitment order was based on the sum of the risk assessment tests, Thill's history of behavior, and the compelling nature of the factors in Thill's diagnosis, all of which the court found were still valid. The court found Thill had not sufficiently progressed in treatment since his commitment and no facts indicated Thill was less likely to reoffend than when the original finding was made. The court also found two therapists that had collateral contact with Thill at the State Hospital were highly corroborative, in that one therapist said Thill was doing well but it would take at least three years before he would be ready for a transition center and another therapist expressed concerns regarding Thill's participation in group therapy. The district court also found Thill's deviant sexual preferences carried "great weight" and found Thill had a high level of psychopathy still present. The court found Thill's score on risk assessment instruments, in light of all the other facts, sufficient to support the finding he was likely to reoffend.

[¶ 12] Clear and convincing evidence in the record supports the district court's findings. Dr. Lisota testified regarding his annual review and report regarding Thill and his conclusions regarding the three statutory prongs and the "serious difficulty" requirement. Dr. Lisota testified that Thill received a score of six on the Static–99R risk assessment test, which places Thill in the high-risk range for reoffence. Dr. Lisota testified the "average sex offender" in the Static–99R sample has a score of two, and Thill's score places him in a group of individuals who are approximately 3.7 times more likely than the average sex offender to reoffend. Dr. Lisota also testified that Thill's diagnosis of pedophelia provides part of the nexus in the likelihood to reoffend, because that condition is very difficult to treat and is also a condition that is never cured. Dr. Lisota testified at best an individual learns to manage those thoughts, urges and feelings, and hopefully is able to do so successfully across time as a result of treatment.

[¶ 13] Further, Dr. Lisota testified that he reviewed Dr. Krance's earlier scoring of the Psychopathy Checklist Revised and that Thill's score of 34.4 is accurate, which indicates a high existence of psychopathy

**334**

and places him at a greater risk for recidivism. Ultimately, it was Dr. Lisota's opinion that Thill had not received sufficient treatment. Dr. Lisota's testimony and report supports the district court's finding that Thill is likely to reoffend if released to the community. Although Thill suggests the district court erred in its findings by looking back to Thill's particular diagnoses, we conclude the court did not err in its consideration of Thill's diagnoses of pedophelia and sexual sadism, in addition to his high level of psychopathy, in light of Thill's short period in treatment at the State Hospital.

### B

[¶ 14] Thill argues Dr. Lisota's opinion that he has serious difficulty controlling his behavior is not supported by clear and convincing evidence. According to Thill, he has demonstrated he had no serious difficulty in a structured environment, as indicated in Dr. Lisota's report, and Dr. Lisota's conclusion did not consider that Thill successfully completed treatment at the state penitentiary. However, Dr. Lisota testified that it is community behavior, rather than institutional behavior, that is the concern for "serious difficulty," and the treatment afforded at the penitentiary would be insufficient to meet Thill's particular needs. Dr. Lisota opined that, while Thill has made some progress in treatment in the last year since his commitment, he is not safe to return to the community.

[¶ 15] Thill nonetheless contends Dr. Benson's testimony demonstrates he is only a "moderate risk" to reoffend under the diagnostic tests. Thill relies on Dr. Benson's conclusion that Thill would not have serious difficulty in controlling his behavior in the community. In essence, Thill invites this Court to reweigh Dr. Benson's testimony and report over that of Dr. Lisota's testimony and report.

[¶ 16] Here, the district court again found by clear and convincing evidence Thill has serious difficulty controlling his behavior and that applies to his serious inability to control his urges to commit further sexually predatory conduct. In so finding, the court looked to Thill's criminal history, his prior flight to avoid prosecution, his pedophelia diagnosis and inherent difficulty the condition causes, and his anti-social and narcissistic behavior. Significantly, the court found none of these considerations had abated and are still concerns. Clear and convincing evidence supports the court's findings. As Dr. Lisota opined Thill has a long and extensive history of sexually offending and problematic behaviors. Given the diagnoses, Dr. Lisota opined the treatment and treatment participation Thill has received to date has not been adequate to negate the overwhelming amount of historical evidence, as well as the diagnostic and actuarial indicators.

[¶ 17] This Court gives great deference to the district court's credibility determinations of expert witnesses and the weight given to their testimony. *Matter of Mangelsen*, 2014 ND 31, ¶ 8, 843 N.W.2d 8. We have explained the district court is the best evaluator of credibility when there is conflicting testimony, and we refused to second-guess its credibility determination. *Id.* A claim that the district court improperly relied on one expert's opinion over the other challenges the weight of the evidence, not the sufficiency of the evidence. *Id.* "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* Although Dr. Benson disagrees with Dr. Lisota's opinion, Dr. Lisota's testimony and report supports the district court's finding that Thill is likely to reoffend if released to the community and has serious difficulty controlling his behavior.

[¶ 18]   Under our modified clearly erroneous standard of review, we conclude the district court order was not induced by an erroneous view of the law and sufficient evidence exists supporting the district court's finding that the State showed a nexus between Thill's sexual and personality disorders and his lack of control, distinguishing him from the typical recidivist in an ordinary criminal case.   Therefore, we conclude the district court did not err in finding the State proved by clear and convincing evidence that Thill is likely to engage in further acts of sexually predatory conduct and has serious difficulty controlling his behavior.

### IV

[¶ 19]   We affirm the district court's order finding Thill continues to be a sexually dangerous individual and continuing his treatment at the State Hospital.

[¶ 20]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

CAROL RONNING KAPSNER, J., concurs in the result.